244 So.2d 802

**NORTH AMERICAN ACCEPTANCE CORPORATION, a Corporation,**

**v.**

**James A. CUTTS and Helen B. Cutts.**

**3 Div. 24.**

Court of Civil Appeals of Alabama.

Feb. 17, 1971.

Miller & Hoffmann and J. F. Lassiter, Jr., Montgomery, for appellant.

Azar, Campbell & Azar, Montgomery, for appellees.

BRADLEY, Judge.

This proceeding was commenced when appellees here, Mr. and Mrs. James A. Cutts, plaintiffs below, filed an action in the Circuit Court of Montgomery County against appellant here, North American Acceptance Corporation, a Corporation, claiming the sum of $1,822.79 to be due under a contract they had with appellant for the purchase of a house and lot in the City of Montgomery.

On May 28, 1969 appellant filed a motion to transfer to the equity side of the Circuit Court this action, and have it disposed of along with another suit involving the same property. This motion was overruled on July 10, 1969.

A demurrer was filed to the complaint on September 16, 1969, and was later overruled by the court.

The appellant then answered the complaint on September 30, 1969 by filing five pleas thereto. Demurrers to pleas two, three and five were filed by the appellees, and these demurrers were sustained by the trial court.

Issue was joined on the complaint and pleas one and four filed thereto. Trial was had before the court and jury, with verdict being returned in favor of appellees for $1,822.79. A judgment was entered in accordance with the jury verdict.

Appellant thereupon moved for a new trial, which motion was later overruled.

On April 29, 1970 appellant filed notice of appeal to this court, and on May 1, 1970 filed a supersedeas bond.

Appellees entered into a contract with appellant on March 29, 1968, wherein appellees agreed to purchase a certain house and lot in Montgomery, Alabama, subject to the terms and conditions set forth in the written contract, and moved into possession of the property.

As required by the "Agreement for Deed," the appellees paid $245 as down payment, and also paid nine of the purchase price installment payments (out of a total of 180 payments) at the rate of $112.-40 per month. In addition to the foregoing, and by virtue of the said agreement, appellees also undertook to make repairs, such as replacing a hot water heater ($29.-15), making electrical repairs ($27.50), and repainting the house inside and out ($247.-36). Also in accordance with the agreement, the appellees procured insurance ($60), making the total expended by appellees $1,822.79.

On the trial of the cause, appellant questioned the propriety of the house painting, asserting that it was an improvement not required by the agreement. Appellant also asserted that the insurance procured by the appellees was "homeowners" insurance, covering personal property, as well as real property, and therefore not required by the agreement.

The agreement entered into by the parties provided that should the buyers (appellees) first make the payments and perform the covenants mentioned in the agreement, the seller (appellant) would convey to the buyers its interest in the property, subject to the following restrictions:

"This Agreement is subject to any statutory rights of redemption by virtue of that certain foreclosure deed from North American Acceptance Corporation to North American Acceptance Corporation dated July 18, 1967, * * *.

"This Agreement is also subject to any rights of Charles Terry Cline, Jr. by virtue of 'Agreement for Deed' dated October 29, 1967, from North American Acceptance Corporation, a corporation.

"Provided, however, that where the property which is the subject of this Agreement is subject to an equity of redemption, such redemptive right shall be superior to this Agreement, said Agreement being made specifically under and subject to any right of redemption."

The agreement entered into by the parties also specifically provided that in the event the buyers failed to carry out any of their covenants, particularly those for the payment of the down payment and installments, such payments would be deemed forfeited to the seller as rent. There were other provisions that were also directed to a possible default on the part of the buyers, stating what would happen if such should occur.

The agreement is devoid of any provision authorizing the seller to retain as rent any moneys paid to it or expended on the property while the buyers were in possession upon the failure of sellers to convey title to the buyers due to the failure of the vendor to carry its end of the bargain, i. e., convey good title to vendees.

Mr. Cutts testified that he read the agreement and signed it, knowing that it was subject to the potential claim of Mr. Cline.

Mr. Cutts also testified that after having made the down payment, installment payments, insurance payment, and the repairs, all pursuant to the agreement, that appellant notified appellees on February 3, 1969 to vacate the premises because appellant was unable to complete the sale as contemplated in the agreement.

Appellees did vacate the premises and have since been unable to recover the money expended pursuant to the agreement as heretofore mentioned.

Appellant has made nine assignments of error, but assignments two, eight and nine were not argued in brief and are thereby deemed waived. Supreme Court Rule 9.

Assignment of error one is based on the alleged error of the trial court in refusing to transfer the present action to the equity docket, where another proceeding was docketed which involved the same property.

Appellant says that the line of cases holding that error in refusal of a trial court to transfer a cause to the equity side must be raised by mandamus, and cannot be considered on appeal from a judgment thereafter entered, applies only to cases initially raising some equitable question on the law side below.

Appellant also contends that the case at bar is distinguishable in that this case is directly concerned with the same property dealt with in a separate case which was already on the equity side, wherein appellant asserts said equity case had directly involved the rights of the parties in the case at bar.

As authority for its position, appellant cites us to the cases of BBC Inv. Co. v. Ginsberg, 280 Ala. 148, 190 So.2d 702, and Amann v. Burke, 237 Ala. 380, 186 So. 769. *Ginsberg,* supra, merely states that where property rights are involved, all persons having legal or equitable rights in the property must be made parties. Similarly, in *Amann,* supra, it is said that minors should be represented in a sale for division of property where they owned a one-third interest in the property.

Even assuming for argument's sake that appellant might possibly be correct in asserting that appellees should have been

joined in the suit on the equity side, this would not mean that error claimed in the refusal to transfer an action to the equity side could be raised by appeal rather than by mandamus. In fact, appellant has cited us to no authority which would support such a contention.

Furthermore, appellant fails to point out why it feels that the case at bar should be treated differently from the other cases, particularly where, as in the present case, the suit on the equity side is admittedly a different action from that on the law side in that the parties are not the same, and for ought that appears, the relief sought was entirely different.

Appellees in answer say, "The law is so well settled on this point and hardly admits of any argument of any kind." Yet, in their propositions of law, appellees do cite us to two Alabama cases—Alabama Power Co. v. Daily, 31 Ala.App. 441, 18 So.2d 142; and Dudley v. Whatley, 30 Ala.App. 579, 10 So.2d 43, which hold that mandamus is the proper way to review a court's refusal to transfer a case from one side of the Circuit Court to the other side.

Based on the decision in the *Daily* and *Whatley cases,* supra, we conclude that the appellant failed to pursue the proper review procedure for reviewing the order of the trial court refusing to transfer the present case from the law side of the Montgomery Circuit Court to the equity side.

■ Assignment of error seven asserts that the trial court erred in sustaining appellees' objection to the introduction into evidence by appellant of the decree of the equity court relating to the same land which is involved in the case at bar. Appellant mistakenly argues this assignment as assignment of error six.

Appellant says that the decree of the equity court should have been introduced into evidence because one of the appellees, while testifying in the case at bar, first mentioned the cause and even gave an interpretation of it, saying that the person named in the agreement, Charles Terry Cline, Jr., was not the one that reclaimed the house; and that the equity decree is relevant to the case at bar because it deals directly with the property in the instant case and explains how the property came to be sold.

The decree hereinafter referred to orders appellant and one Hugh W. Williams to execute a warranty deed to a Mr. Belser, as trustee, who in turn is to sell said property, with $7,000 of the proceeds therefrom being paid to appellant for an indebtedness owed it by Williams, and the remainder going to Williams.

In support of the assertion that the decree should have been admitted into evidence, appellant cites us to the cases of Barnes v. State, 31 Ala.App. 187, 14 So.2d 242 and Nelms v. Steiner, 113 Ala. 562, 22 So. 435.

After a careful reading of these two cases, we are not convinced that they support the proposition for which they are argued. The facts of the cited cases are totally dissimilar from the present case.

Appellees, on the other hand, contend that the court was correct in not admitting the equity decree because appellees were not parties and not subject to the jurisdiction of the court, and it could, therefore, have no binding effect on the present litigation.

Appellees also say that the failure to admit the decree would at most be error without injury, since the decree does not affect the issues between the parties in the case at bar.

The central issue in this case, as we see it, is whether the appellees are entitled to recover of the appellant the sums of money expended by them during the time they were in possession of the premises in the absence of a provision in the agreement that such expenditures would be considered rent in the event the seller was unable to transfer title.

The proffered equity decree which the trial court refused to admit into evidence in the case at bar did not illuminate this issue at all.

The equity decree merely required the sale of the property in question and a specific distribution of the proceeds therefrom.

The parties to the two proceedings were different, and from ought appearing on the face of the decree, the subject matter was different.

We are unable to perceive the materiality of the equity decree on the issue before the trial court as enunciated above. Furthermore, the appellant has not enlightened us in this regard.

We are not convinced that the trial court committed reversible error in refusing to admit the equity decree into evidence in the case at bar.

Appellant says next that it is arguing assignments of error two and three together, but we think appellant meant to argue assignments three and five, since two and three are not related. We will therefore consider the arguments to have been made in reference to assignments three and five.

These two assignments of error question the trial court's ruling sustaining the demurrer to pleas two and three.

Plea two avers that the "Agreement for Deed" entered into by the parties to the case at bar contained a contingency that was developed into reality by the Circuit Court of Montgomery County when it ordered one Hugh W. Williams and the appellant to transfer their interests in the property, which is the subject of the present controversy, to a third party for sale, which order prevented appellant-vendor from being able to transfer title to appellees-vendees.

Plea three avers that the agreement entered into by the parties here was also subject to the interests of Charles Terry Cline, Jr., who had entered into an "Agreement for Deed" prior to the time appellees entered into such an agreement, all as provided in said agreement now under consideration.

The demurrer which was sustained to pleas two and three, was based on general grounds and very probably could have been successfully attacked on this basis; however, appellant did not in its brief, argue this aspect of the ruling of the trial court. The failure to so argue is considered to be a waiver of any such argument. Supreme Court Rule 9.

The complaint, in essence, alleged that appellees-vendees had entered into an agreement with appellant-vendor whereby they had agreed to buy a parcel of property from vendor, and vendor had agreed to transfer title to vendees upon their complying with their part of the bargain. However, there was a proviso attached to vendor's promise. This proviso stipulated the vendor's interest was subject to two claims that might or might not materialize.

Apparently one of the claims materialized, because the vendor notified the vendees that it could not complete the agreement, because it did not now have title to transfer, and advised vendees to vacate the premises.

Vendees vacated and asked for the repayment of all moneys expended during the time they were in possession of the premises.

Vendor refused to repay, and this action resulted.

Pleas two and three attempted to set up a defense to the action by saying that the occurrence of one of the contingencies set out in the "Agreement for Deed" prevented the vendor from carrying out its part of the bargain; and therefore, vendor was not responsible for the failure of the agreement.

We are of the opinion that pleas two and three present no defense to the action,

in that there was a failure of consideration, because vendees did not receive what they had bargained for in the "Agreement for Deed," and that was delivery of good title by vendor. Although vendor has been prevented from delivering title by some event envisioned by the agreement, nevertheless vendees had nothing to do with it, nor did they have any control over it happening. Furthermore, there was no contractual arrangement for vendees to pay any amount for use and occupancy should they be prevented from purchasing the property. Hence, the averments of these two pleas presented no defense to vendees' claim, and the demurrers thereto were properly sustained.

Assignments of error four and six are the remaining assignments argued by appellant.

■ Assignment four asserts that the trial court erred in sustaining a demurrer to appellant's plea five, which averred that appellant was entitled to set-off or recoupment for the vendees' use and occupancy of the premises from March 1968 to February 1969, which is the time vendees occupied the property pursuant to the "Agreement for Deed" made by appellant.

Plea five was an attempt by appellant to recoup or set off what it considered to be a reasonable amount for vendees' use and occupancy of the premises for the time they were in possession.

The demurrer filed to this plea was grounded on the averment that the plea did not allege a good defense in recoupment or set-off.

Again we point out that the grounds of the demurrer to this plea were probably general and subject to question on this basis; however, no argument on this aspect of the ruling on demurrer is presented in appellant's brief; hence, we consider it waived. Supreme Court Rule 9.

Plea five alleged that vendees enjoyed the use and occupancy of the premises in

question from March 1968 to February 1969, and that use and occupancy was worth $1,750., and that vendees were so indebted to vendor-appellant.

Nowhere in plea five is it averred that vendor had the title or right to title or just what its proprietary interests were that would entitle it to claim of vendees $1,750 for the use and occupancy of the premises; hence, we think the plea was defective and properly subject to demurrer.

We think if appellant wished to recover from vendees a reasonable amount for use and occupancy, appellant should have shown some contractual arrangement requiring vendees to pay in the event the vendor was unable to deliver title due to the happening of one or both of the contingencies provided in the agreement; or it should have brought itself within one of the applicable provisions of Title 31, Section 46, Code of Alabama 1940, as Recompiled 1958.

The "Agreement for Deed" did not contain any agreement for the payment of rent should one of the events occur as provided therein.

Appellees say that case law supports the proposition that a vendee, in the absence of contractual provisions to the contrary, can recover from his vendor, all of the money paid on the purchase price and other monies expended pursuant to the contract, when, through no fault of the vendee, the contract is terminated, and especially when it was terminated by the inability of the vendor to complete the contract and convey title.

They then say that the only remaining question to be decided is the right of the vendor in such a situation to recover for the reasonable use and occupation of the land.

■ An action for the use and occupation of land was unknown at the common law; and in Alabama, such an action can be maintained only when it can be fitted

into one or more of the classifications provided by Section 46, supra.

Appellant made no effort to bring its claim within any of the provisions set out in Section 46, supra. Hence, we consider plea five to be bad, and that the trial court was correct in its ruling.

Assignment six questions the trial court's ruling sustaining appellees' objection to the following question propounded to one of the appellees on cross-examination:

"Do you have an opinion as to what the reasonable rent value of that property would be?"

In support of assignment six, appellant argues that it could find no case in Alabama allowing a recovery of reasonable rental for use and occupancy in a situation similar to the one at bar, but did discuss several Alabama cases which allowed recovery of rental value less improvements made by the purchaser.

We do not consider these cases apt authority for the argument made in support of assignment six, for the reason that the expenditures made in the case at bar by the purchasers were for repairs required by the agreement and were not in the nature of improvements to property as envisioned by the cited cases.

Furthermore, since we have decided that plea five was defective, and the trial court properly ruled thereon, evidence to prove such a discredited plea would, of course, be inadmissible. Furthermore, such evidence was not relevant or material to any valid pleading filed in the case.

The trial court acted properly in refusing to permit the witness to answer the question which is the subject of assignment six.

No reversible error having been argued, this case is affirmed.

Affirmed.